IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARAMAD CONLEY,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>CITY AND COUNTY OF SAN FRANCISCO AND PRENTICE EARL SANDERS,<br><br>　　　　Defendants. | Case No.: C-12-00454 JCS<br><br>**ORDER GRANTING IN PART DEFENDANTS' MOTION TO DISMISS** |

**I.      INTRODUCTION**

Plaintiff Caramad Conley brings this civil rights action against the City and County of San Francisco ("City") and former San Francisco Police Department Inspector Prentice Earl Sanders ("Sanders") (collectively, "Defendants") following a December 14, 2010 order granting Plaintiff's petition for a writ of habeas corpus and vacating his January 25, 1995 murder conviction. Plaintiff alleged a claim for damages under 42 U.S.C. § 1983. Presently before the Court is Defendants' Motion to Dismiss ("Motion"). A hearing on the Motion was held on June 15, 2012 at 9:30 a.m. For the reasons stated below, the Motion is GRANTED in part.

## II. BACKGROUND

### A. The Complaint

This action arises out of events that begin with the April 9, 1989 shooting deaths of Charles "Cheap Charlie" Hughes and Roshawn Johnson in the Hunters Point neighborhood of San Francisco. Complaint ¶ 21. Plaintiff was arrested for these crimes on November 20, 1992 and remained imprisoned through his trial in September 1994. *Id.* at ¶ 3. Plaintiff was convicted by a jury of two counts of first degree murder, conspiracy to commit murder, conspiracy to commit first degree murder, and eleven counts of attempted murder. *Id.* On January 25, 1995, the San Francisco Superior Court sentenced Plaintiff to life plus 22 years in prison, without the possibility of parole. *Id.* at ¶ 4. Until the December 14, 2010 order granting his petition for writ of habeas corpus and vacating his conviction, Plaintiff spent 18 years in prison. *Id.* at ¶ 1.

Plaintiff alleges that his wrongful conviction resulted from the misconduct of the San Francisco Police Department ("SFPD") homicide investigators in charge of the case, Defendant Sanders and Napoleon Hendrix. *Id.* at ¶ 3. Specifically, Sanders assured Plaintiff's wrongful conviction by "willfully suppressing a mountain of exculpatory evidence showing that the linchpin witness against him, Clifford Polk, had been paid thousands of dollars and received other benefits, in exchange for his testimony." *Id.* at ¶ 1. Sanders made a "multi-year investment" in the teenager Polk, offering him cash on demand, mentorship, employment, housing, and immunity from conviction for his recidivist drug crimes, all in exchange for Polk's testimony falsely implicating Plaintiff in the shootings. *Id.* at ¶ 25. These undisclosed funds came through SFPD's Witness Protection Program. *Id.* at ¶ 38. The Complaint further alleges that Defendants provided, and concealed, benefits to the prosecution's second most important witness, John Johnson. *Id.* at ¶ 1. Sanders procured Johnson's testimony against Plaintiff by arranging for Johnson, who was in prison, to have private sexual encounters with a female inmate. *Id.* Sanders' misconduct was made possible because of the City's official policies "enabling suppression of evidence of payments to testifying witnesses and their failures to train and supervise police officers regarding their constitutional obligations . . . ." *Id.* at ¶ 3.

In addition to the suppression of exculpatory evidence, "defendants also violated clear constitutional requirements and denied Conley a fair trial by knowingly permitting Polk to perjure himself while testifying against Conley." *Id.* at ¶ 7. In particular, Polk falsely testified that he was not under any witness protection program, despite receiving money from Sanders pursuant to such a program.[1] *Id.* Sanders sat next to the prosecutor at counsel table while Polk lied. *Id.* at ¶ 43.

In the Complaint's Claim for Relief, Plaintiff alleges that Sanders acted willfully and with conscious disregard for Plaintiff's constitutional due-process rights. *Id.* at ¶ 87. Sanders violated Plaintiff's clearly established due-process rights guaranteed by the Fourteenth Amendment by "intentionally suppressing material impeachment evidence and suborning perjured testimony." *Id.* at ¶ 88. Additionally, the City, through the SFPD's Witness Protection Program, followed an "unconstitutional unofficial custom and practice of delegating plenary authority to case investigators regarding the use and documentation of [Program] funds, including cash payments to testifying witnesses." *Id.* at ¶ 92. The City also failed to train and supervise its case investigators regarding the constitutional uses and required documentation of witness protection funds. *Id.* at ¶ 93. The City's unofficial custom "effectively ensured" that potentially exculpatory evidence would not be revealed to criminal defendants, and resulted in Plaintiff's wrongful conviction and 18-year imprisonment. *Id.* at ¶ 91.

**B.    The Motion to Dismiss**

Defendants' Motion contends that the Complaint presents two bases of liability in regards to Sanders' alleged conduct: 1) his alleged failure to inform the prosecutor that Polk was receiving benefits from the SFPD; and 2) his "failure to stand up in court during Plaintiff's murder trial and 'correct' false testimony from Polk." Motion at 1-2. Defendants' Motion seeks dismissal of only the second basis for Plaintiff's claim. *Id.* at 2. Defendants argue that Sanders cannot be held liable under § 1983 for suborning perjury because correcting false testimony is a prosecutorial function, entitling Sanders to absolute immunity, and, at the very least, he is entitled to qualified immunity

---

[1] On December 13, 2005, Polk executed a declaration under penalty of perjury in which he recanted his testimony implicating Conley in the murders and explained that Sanders and Hendrix pressured him into testifying falsely. *Id.* at ¶ 68.

3

since it was not clearly established that Sanders had a duty to correct Polk's testimony during trial proceedings.

In response, Plaintiff argues that Defendants' Motion is based on a misreading of his Complaint and should be denied. Plaintiff's Opposition to Defendants' Motion to Dismiss ("Opposition"), 1. Contrary to Defendants' interpretation, Plaintiff does not intend to argue that "Sanders' failure to correct Polk's false testimony in front of the jury provides a separate or stand-alone basis for liability under § 1983." Opposition at 1. Instead, Plaintiff maintains, this allegation is simply "an important piece of evidence that speaks directly to a number of issues in the case, including Sanders' state of mind and wrongful intent; Polk's complicity in Sanders' scheme to suppress evidence of the payments to Polk; the prosecutor's ignorance of the benefits given to Polk . . . ; and the fact that both Conley and his trial counsel never received any of the exculpatory evidence . . . ." *Id.* Plaintiff contends that denying the Motion is appropriate because rather than seeking dismissal of the sole claim asserted in the Complaint, Defendants seek to "dismiss" a legal theory Plaintiff has not asserted and does not intend to assert. *Id.* at 9. Furthermore, to the extent Defendants seek to challenge specific allegations within the claim, the use of a Rule 12(b)(6) motion is improper and any motion to strike under Rule 12(f) would be meritless given the centrality of the allegations to Plaintiff's claim. *Id.* at 9-10 (citing *Thompson v. Paul*, 657 F. Supp. 2d 1113, 1129 (D. Az. 2009)).

In their reply, Defendants reject Plaintiff's insistence that the Complaint does not present a suborning perjury claim. Defendants' Reply in Support of Motion to Dismiss ("Reply"), 1. Defendants point to specific language in the Complaint they contend make it "crystal clear" that Plaintiff is alleging Sanders violated his right to due process in two distinct ways—by suppressing exculpatory evidence and by presenting false evidence to the jury. Reply at 2 (citing Complaint at ¶¶ 83, 88). Defendants further contend that a Rule 12(b)(6) motion is proper where, as here, a party presents a single cause of action that presents multiple theories of liability. *Id.* at 3 (citing *Nelson v. Am. Power & Light*, 2010 WL 3219498 (S.D. Ohio Aug. 12, 2010); *Bayview Loan Servicing, LLC v. Law Firm of Richard M. Squire & Assocs.*, 2010 WL 5122003 (E.D. Pa. Dec. 14, 2010)).

### III. ANALYSIS

Whether or not Plaintiff's Complaint can be read to present a § 1983 claim based on Sanders' failure to correct Polk's testimony in front of the jury, Plaintiff unambiguously states that he does not assert, and does not intend to assert, such a claim. The Court need not parse the language in the Complaint given this concession in Plaintiff's Opposition. Accordingly, to the extent the Complaint states a stand-alone § 1983 claim based on Sanders' failure to correct Polk's testimony in front of the jury, that claim is dismissed. Additionally, the Court declines to strike the language in the Complaint cited by Defendants as problematic because they have not shown, and the Court cannot conclude, that such language is "redundant, immaterial, impertinent, or scandalous." Fed. R. Civ. P. 12(f).

### IV. CONCLUSION

For the reasons stated above, Defendants' Motion is GRANTED in part.

IT IS SO ORDERED.

Dated: June 19, 2012

JOSEPH C. SPERO

United States Magistrate Judge