```
                                              Pages 1 - 14

            UNITED STATES DISTRICT COURT

          NORTHERN DISTRICT OF CALIFORNIA

    BEFORE THE HONORABLE JOSEPH C. SPERO, MAGISTRATE

CARMAD CONLEY,                   )
                                 )
          Plaintiff,             )
                                 )
  VS.                            )  No. C 12-0454 JCS
                                 )
CITY & COUNTY OF SAN FRANCISCO,  )
ET AL.,                          )
                                 )  San Francisco, California
          Defendants.            )  Friday
_____)  June 15, 2012



              TRANSCRIPT OF PROCEEDINGS
```

**APPEARANCES**:

**For Plaintiff:**            Keker & Van Nest LLP
                              633 Battery Street
                              San Francisco, California 94111-1809
                    **BY:  DANIEL EDWARD PURCELL, ESQUIRE
                          REBEKAH LEIGH PUNAK, ESQUIRE
                          ERIC H. MACMICHAEL, ESQUIRE**

**For Defendants:**           City Attorneys Office
                              1390 Market Street, 6th Floor
                              San Francisco, California 94102-5408
                    **BY:  JOSHUA SETH WHITE, DEPUTY CITY ATTORNEY
                          PETER J. KEITH, DEPUTY CITY ATTORNEY**


**Reported By:**    *Katherine Powell Sullivan, CSR #5812*
                   *Official Reporter - U.S. District Court*

```
 1                  P R O C E E D I N G S
 2  JUNE 15, 2012                                 9:36 A.M.
 3          THE CLERK:  Calling case No. C 12-454 Carmad Conley
 4  versus the City and County of San Francisco.
 5          THE COURT:  Counsel, please state your appearances.
 6          MR. PURCELL:  Good morning, Your Honor.  Dan Purcell
 7  from Keker & Van Nest for Mr. Conley.  With me are my
 8  colleagues, Eric MacMichael and Rebekah Punak.
 9          THE COURT:  Welcome.  Welcome.
10          MR. WHITE:  Good afternoon, Your Honor.  Joshua White
11  on behalf of defendants.  With me is Peter Keith.
12          THE COURT:  Welcome.
13          MR. KEITH:  Good morning.
14          THE COURT:  So here's what I think.  You know, I
15  don't think there is a dispute that -- and the plaintiffs seem
16  to have agreed that there is no freestanding, I think was the
17  word, or standalone cause of action under 1983 for failure to
18  correct the purported perjury in open court.
19      So it seems to me just a question of process how we deal
20  with it.  It isn't a motion to strike.  And you are correct not
21  to bring a motion to strike because I wouldn't have struck it.
22      I don't think there's any disagreement as to when we -- as
23  to that there can't be a cause of action for just failing to
24  correct.  It sort of slips in between the procedural, but I
25  thought I would enter an order that says you can't have a
```

```
 1  free -- standalone cause of action.
 2       So, it's granted in part.  To that extent, you don't have
 3  to -- it doesn't change anything.  You're not going to amend.
 4  And then just answer whatever you're going to do.
 5       Does that sound rational?
 6            MR. WHITE:  That's fine, Your Honor.
 7       We just want to make clear that the issue of whether or
 8  not this was perjury or he had a duty to correct it will just
 9  not be an issue in this case.
10            THE COURT:  You're not going to take care of this
11  that way because you can't because it's a 12(b) motion.  You
12  can't take care of the issue of whether or not that evidence
13  might be relevant to something else.
14            MR. WHITE:  That's true.
15            THE COURT:  Correct.
16            MR. WHITE:  I think from a fair reading of the
17  complaint, I mean, there's very clear language, like in
18  paragraphs 83, 84, 88, where these are not just facts that are
19  thrown in insofar as --
20            THE COURT:  I appreciate why you brought the motion.
21  And I don't think they -- I don't think there's a dispute,
22  actually, that there is no available cause of action for
23  sitting at counsel table and failing to correct what is alleged
24  to be perjury.  Is that right?
25            MR. PURCELL:  That is right.  Well, whether or not
```

```
 1  there's an available cause of action, we're not bringing one
 2  here.
 3          THE COURT:  Whatever it is.  To the extent that that
 4  is a claimed cause of action, it's out of the case.  Whether
 5  it's relevant to some other cause of action, we'll deal with
 6  that later.  May be.  May not be.  I don't know.  But what I
 7  would do is enter an order saying there's no cause of action in
 8  the case for this, and then we proceed.
 9      Does that make sense?
10          MR. WHITE:  I think so.
11          THE COURT:  Okay.
12          MR. PURCELL:  Yes, Your Honor.
13          THE COURT:  All right.  So that's going to be the
14  order.
15      In terms of process, what we're doing, I'm reluctant to
16  bifurcate the way the City wants me to, but I am not reluctant
17  to bifurcate.
18      Bifurcating a slice of the individual defendant's
19  liability strikes me as a fools errand, that -- that we're
20  going to get -- that there's going to be too much in the -- too
21  many in the way of witnesses, et cetera, that are going to
22  overlap.
23      I also don't see how -- part B, sort of the effect on the
24  trial stuff, that seems to me to be an easy issue.  From an
25  evidentiary point of view, it's the record.  You know, it's
```

1  hard to imagine that we get -- that there's a lot of extra
2  record evidence in terms of the effect on the trial piece that
3  you are worried about.  So I'm reluctant to carve out an
4  individual defendant's liability.
5      On the other hand, the kind of discovery to which the
6  plaintiffs would be entitled on Monell, for whether this is a
7  policy and what's the entire dimensions of everybody they have
8  ever done this to and everybody's ratified that he was going to
9  keep it secret from everyone forever, and that kind of stuff,
10 is bigger, I think, than looking at the record and seeing in
11 terms of witnesses you have to produce and who you would want
12 to depose.
13     And so what I would be inclined to do -- and I would like
14 to hear your wisdom on this -- is bifurcate the Monell portion
15 of the case and stay it until we deal with the liability issue
16 of the individual defendant, and proceed on that.  Set dates
17 for that first part, and finish it.  And then we'll do Monell
18 if there's a Monell case to be had.
19     I don't know.  It's not quite what either of you wanted,
20 but why don't you tell me what you think of that.
21         **MR. PURCELL:**  Your Honor, I've been in 1983 cases
22 where courts have done it that way.  I think it's a reasonable
23 approach.
24     I think, in this case, there's some interplay between the
25 Monell issues and the individual liability issues.  And I guess

```
 1  the one thing I would worry about is that the City would take
 2  the position that we weren't entitled to some discovery on
 3  individual liability issues because they may also relate to
 4  Monell.
 5       As long as we are able to fully investigate individual
 6  liability issues, I think that sort of approach would be
 7  acceptable.
 8           THE COURT:  I can see how that would be an issue.
 9  But I think you can work through that.
10           MR. WHITE:  Yeah.  I think if there are particular
11  discovery requests, or whatever, that sort of toe the line, we
12  could deal with them.
13           THE COURT:  Right.  My view on that is as long as
14  you're -- when you're trying to just use this as a vehicle to
15  get Monell discovery, I think it will be obvious.
16       There are going to be, you know, inquires about what
17  happened in this case, what is the evidence regarding the
18  particular program, and how it was implemented that will --
19  that are both relevant to the Monell issues and relevant to
20  individual liabilities.
21       But I think it will be pretty obvious when you are seeking
22  stuff that doesn't have to do with this case.  I know you both,
23  and I rely on you both to figure that out.  I don't think it's
24  a big issue.
25           MR. WHITE:  Your Honor --
```

1          **THE COURT:**  Yes, go ahead.

2          **MR. WHITE:**  I'm sorry, Your Honor.  The only issue we
3   would raise is we would like to bring an early summary judgment
4   motion on the qualified immunity issue, and we discussed that
5   in our papers, in terms of whether -- the scope of Inspector
6   Sanders' duty.  And I'm assuming that if we brought that motion
7   early, we wouldn't be precluded or would we be precluded from
8   bringing another summary judgment motion?

9          **THE COURT:**  I'm not going to permit an early summary
10  judgment motion.  I think that it's going to be fraught with
11  peril until we figure out exactly what the facts are that they
12  want to -- all you've got now is allegations.  You've got the
13  habeas record, but they're going to make another record here.
14  I'm worried about an early summary judgment motion.  I think
15  the fact -- so I don't -- so I wouldn't allow you to bring more
16  than one.

17     I'm not going to -- we're not going to spend a lot of time
18  on this phase.  I'm going to cut off merits discovery at the
19  end of the year, non-expert discovery at the end of the year,
20  and have the hearing on any dispositive motions in March.

21     So we're not going to spend a tremendous amount of time on
22  this.  And so, you know, whether or not after two months you
23  brought a motion and we heard it in November or we hear it in
24  March, I don't think is a particularly huge reason to do that,
25  especially because the likely outcome is we will just have to

```
 1  continue it.
 2          MR. WHITE:  Your Honor, I would request a few more
 3  months of fact discovery.  I would ask until the early summer.
 4      The main reason for that is plaintiff's counsel has had
 5  this case since, I mean, whenever they filed their habeas
 6  petition, which I believe was in 2006.  But I could be wrong
 7  about that.
 8      We at the City Attorneys Office have had this case for
 9  just a few months.  I mean, while we had some role in it during
10  the habeas proceedings, they were minimal.
11      There's a voluminous record here.  Even assuming at the
12  trial --
13          THE COURT:  I'll give you whatever you need, but it
14  doesn't mean you are going to be allowed to bring an early
15  summary judgment motion.
16          MR. WHITE:  That's fine.  I would ask fact discovery
17  be open through summer of 2013.
18          MR. PURCELL:  I think that's far more time than we
19  need.  I think the record is pretty clear.  The city attorney,
20  as Mr. White said, was involved in the habeas proceeding.  They
21  represented witnesses in that case.  They attended the hearing.
22  And they've actually had our complaint since early 2011, when
23  we served a draft on them as a prelude to the mediation that
24  was unsuccessful.  There's nothing in this case that's a
25  surprise to anybody.
```

```
 1              THE COURT:  Well --
 2              MR. WHITE:  It's not a question of whether it's a
 3   surprise.
 4              THE COURT:  June 1.  So fact discovery, non-expert
 5   discovery will cut off June 1, 2012.
 6              MR. PURCELL:  2013, Your Honor?
 7              THE COURT:  2013.  You're right.  It's going to be
 8   hard to get my arms around that.
 9         June 1, 2013 will also be expert disclosure date.  And
10   rebuttal experts on June 15.  And expert discovery will go
11   through July 15th, 2013.
12         That means we're going to have an October date for --
13   October 18th -- no, I've got it backwards.  We can do it -- we
14   can do the -- the experts aren't going to be relative to the
15   dispositive motions, right?
16         It's hard to imagine they are.
17              MR. WHITE:  Not to us.
18              MR. PURCELL:  Probably not.
19              THE COURT:  I mean, I don't want to overburden you,
20   but I'm thinking of maybe a late July or early August
21   dispositive motion date.
22         So for the moment -- I mean, this is out there.  We can
23   adjust this as we go along.  Let's have the dispositive motion
24   date on July the 26th.
25              MR. PURCELL:  Your Honor, is that the date for
```

1  filing?
2         **THE COURT:**  No.
3         **MR. PURCELL:**  That's the date for the hearing?
4         **THE COURT:**  It's not only the date for the hearing,
5  but the last brief has to be four weeks in advance.
6         **MR. PURCELL:**  Okay.
7         **THE COURT:**  And you guys work out a schedule.  And
8  that will be the date for a summary judgment on all issues
9  other than Monell, which is stayed.  Right?
10     So then trial, more than likely, October.  Let me see what
11 I look like.  Can't do it in October.
12     How long for trial?
13        **MR. PURCELL:**  Two weeks, I think.
14        **THE COURT:**  Meaning eight trial days?
15        **MR. PURCELL:**  That sounds about right to me.
16        **MR. WHITE:**  I don't even -- the criminal -- because
17 the criminal -- assuming that there's a materiality issue, the
18 criminal trial itself was a couple of weeks long.  And that
19 whole thing would have to be read to the jury.  So then on top
20 of that --
21        **THE COURT:**  You think I'm going to let you read the
22 whole trial to the jury?
23        **MR. WHITE:**  There's no other way to assess whether,
24 assuming that there was some sort of constitutional violation,
25 it impacted the jury's decision.  The question is, what did the

```
 1  jury hear?
 2          THE COURT:  I rely on counsel's brilliance to come up
 3  with something other than just playing the tape of the criminal
 4  trial.
 5          MR. WHITE:  We could probably come up with something.
 6  But, again, Your Honor, the question is, how would any
 7  constitutional violation, assuming it existed, have impacted
 8  the jury's decision?
 9      And I don't know of a much briefer way to answer that
10  question other than by letting the jury in this case hear
11  exactly -- I don't even think there's any other way, other than
12  letting the jury hear exactly what was heard in --
13          THE COURT:  November 4th, for 12 trial days.
14          MR. PURCELL:  Your Honor, the expert discovery
15  cutoff, was that July 15th?
16          THE COURT:  Yes.
17          MR. PURCELL:  Thank you.
18          THE CLERK:  The expert rebuttal cutoff, you said, was
19  June 15th.  But June 15, 2013, is a Saturday.
20          THE COURT:  You can adjust it so it actually falls on
21  a weekday.  And then let's have a pretrial conference
22  October 18th.
23          MR. PURCELL:  Your Honor, are you envisioning that
24  the Monell discovery wouldn't start until after the dispositive
25  motions are ruled upon?
```

```
 1              THE COURT:  Yes.
 2              MR. PURCELL:  If the hearing is July 26th, Your Honor
 3   will probably want a couple of weeks to get an order out.  I
 4   don't know, but I would suspect possibly.  That only leaves
 5   three months before trial to do the Monell discovery.
 6              THE COURT:  No, no, it doesn't.  We're not trying the
 7   Monell case.  We're going to try --
 8              MR. PURCELL:  I see.
 9              THE COURT:  Can't we do that?
10              MR. WHITE:  Absolutely.
11              THE COURT:  I don't think it's a jury right issue.
12   If you can convince me otherwise, I would be happy to listen to
13   that.  I mean to bifurcate the case.
14              MR. PURCELL:  I see.
15              THE COURT:  I don't mean to --
16              MR. PURCELL:  I was under the impression we were
17   talking about bifurcating discovery.
18              THE COURT:  For the moment, I'm bifurcating
19   everything.  It's some speculative period of time off, so who
20   knows what's going to be going on.  And if you want to convince
21   me that I should change how that works, I would be happy to
22   hear that as time goes by.  Right now I'm bifurcating --
23              MR. PURCELL:  I'm asking the Court to revisit that.
24   I think that -- I think, practically speaking, if there's a
25   denial of the summary judgment motion on individual liability
```

```
 1  and qualified immunity, there's going to be an appeal, in any
 2  event.
 3          THE COURT:  I would be stunned if there wasn't, but
 4  who knows.
 5          MR. WHITE:  Or if there is a grant of the motion,
 6  there might be as well.
 7          THE COURT:  Yes.  Exactly.
 8          MR. PURCELL:  Certainly, if --
 9          THE COURT:  We are coming to a full stop probably for
10  a period of time or maybe forever.  So we'll see.
11      Anything else we want to chat about?
12          THE CLERK:  Further CMC, Judge.
13          THE COURT:  So I don't want anyone to talk about
14  settlement.
15          MR. PURCELL:  I don't think that's going to be a
16  problem.
17          THE COURT:  The record should reflect that's a joke.
18  I'm really excited about trying this case.  No, do whatever you
19  want.  But I don't see any utility into forcing you to do
20  something right now, which I won't.
21          MR. WHITE:  Thank you.
22          THE COURT:  So I'll see you in --
23          THE CLERK:  You want 90 days?
24          THE COURT:  We are in June?  Yeah, the fall is fine.
25  Sometime in late September, just to check in and see how
```

```
 1  everything is going.
 2          THE CLERK:  How is September 14th, 2012?
 3          MR. PURCELL:  That works.
 4          THE CLERK:  At 1:30.
 5          MR. WHITE:  Let me just have a moment, Your Honor.
 6          THE COURT:  Yeah.
 7          MR. WHITE:  You said September 12th?
 8          THE CLERK:  September 14th.
 9          MR. WHITE:  I'm sorry.  That's fine.
10          THE COURT:  Okay.  1:30.  Give me an updated
11  statement a week in advance, please.
12       Great.  Thank you both.
13          MR. PURCELL:  Thank you, Your Honor.
14          THE COURT:  Thank you everyone.
15          MR. WHITE:  Thank you, Your Honor.
16          (At 9:52 a.m. the proceedings were adjourned.)
17                          -  -  -  -
18                    **CERTIFICATE OF REPORTER**
19       I certify that the foregoing is a correct transcript
20  from the record of proceedings in the above-entitled matter.
21  DATE:   Monday, July 16, 2012
22                  /s/ Katherine Powell Sullivan
                    _____
23
            Katherine Powell Sullivan, CSR #5812, RPR, CRR
24                       U.S. Court Reporter
25
```